**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
NANNYLI RIVERA,                                    Case No.: 1:17-cv-4738

                *Plaintiff,*

    -against-

THE CRABBY SHACK, LLC,
FIFI BELL CLANTON, and GWENDOLYN NILES,

                *Defendants.*
-------------------------------------------------------------------X

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT

 

Levin-Epstein & Associates, P.C.
Joshua Levin-Epstein, Esq.
Jason Mizrahi, Esq.
1 Penn Plaza, Suite 2527
New York, NY  10119
(212) 792-0046

*Attorneys for Defendants*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................. ii

**PRELIMINARY STATEMENT** ........................................................................................... 1

**ARGUMENT** ............................................................................................................................ 3

    I.   **PLAINTIFFS HAD A FULL AND FAIR OPPORTUNITY TO REVIEW DEFENDANTS' FINANCIAL RECORDS** ........................................................................................................ 3

        A.   **Defendants Provided Tax Records Well in Advance of the Mediation** ............ 3

        B.   **Even Assuming, *Arguendo*, that Defendant had not Provided Tax Records and Bank Records, Such Conduct would not Entitle Plaintiffs to Rescind the Settlement Agreement** ........................................................................................ 4

    II.   **PLAINTIFFS' GAMESMANSHIP CANNOT THWART THE ENFORCEMENT OF THE SETTLEMENT AGREEMENT BECAUSE DEFENDANTS PROVIDED THE LONG-FORM SETTLEMENT AGREEMENT** ................................................................................... 5

    III.   **THE SHORT-FORM AGREEMENT IS A BINDING CONTACT, VALID AND ENFORCEABLE** .. 6

        A.   **The Parties Intended to be Bound to their Settlement Agreement** .................. 6

        B.   **The Four *Winston* Factors Demonstrate the Parties' Intended to be Bound to their Agreement** ........................................................................................................ 7

            i.   Express Reservation ............................................................................... 7

            ii.   Partial Performance ................................................................................ 8

            iii.   Remaining Material Terms to Negotiate .............................................. 9

            iv.   Usual Form of Agreement ..................................................................... 9

    IV.   **THE CASES CITED IN THE OPPOSITION ARE EASILY DISTINGUISHABLE FROM THE INSTANT ACTION** ....................................................................................................... 10

    V.   **PLAINTIFFS' FAILURE TO ADDRESS THE ARGUMENTS RAISED IN POINTS I AND II OF DEFENDANTS' MOTION CONSTITUTES A WAIVER** ........................................................ 12

**CONCLUSION** ...................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases**

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*,
   731 F.2d 112 (2d Cir.1984) .................................................................................................. 4

*Alleghany Corp. v. Kirby*,
   333 F.2d 327 (2d Cir.1964) .................................................................................................. 4

*Broadmass Assocs., LLC v. McDonalds Corp.*,
   286 A.D.2d 409 (2d Dept 2001) .......................................................................................... 5

*Ciaramella v. Reader's Digest Ass'n, Inc.*,
   131 F.3d 320 (2d Cir.1997) .................................................................................................. 7

*Clark v. Bristol-Myers Squibb & Co.*,
   306 A.D.2d 82 (1st Dept 2003) ............................................................................................ 5

*Consolidated Edison Co. v. Fyn Paint & Lacquer* Co.,
   2008 WL 852067 (E.D.N.Y. 2008) ..................................................................................... 6

*Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*,
   544 F.Supp. 2d 178 (S.D.N.Y. 2008) ............................................................................... 3, 4

*Delyanis v. Dyna–Empire, Inc.*,
   465 F.Supp. 2d 170 (E.D.N.Y.2006) ................................................................................... 7

*Hallock v. State of New York*
   64 N.Y.2d 224 (1984) ........................................................................................................ 10

*Hawkins v. City of New York*,
   40 A.D.3d 327 (1st Dept 2007) ........................................................................................... 5

*Jackson v. New York City Dep't of Educ.*,
   2012 WL 1986593 (S.D.N.Y., 2012) .................................................................................. 8

*New York State Clerks Ass'n, v. Unified Court System of the State of New York*,
   25 F.Supp. 3d 459 (S.D.N.Y. 2014) .................................................................................. 11

*Phosphates, Inc. v. Arcadian Corp.*,
   884 F.2d 69 (2d Cir. 1989) ................................................................................................ 11

*Rahman v. Kaplan Cornelia, Inc et al*,
   2014 WL 541851 (S.D.N.Y. 2014) ..................................................................................... 7

*Reprosystem, BV v. SCM Corp*
    727 F.2d 257 (2d Cir. 1984) ............................................................................. 10

*Rosoff v. Mountain Laurel Cen. for Performing Arts*,
    317 F.Supp. 2d 493 (S.D.N.Y. 2004) ............................................................... 11

*Shape CD, Ltd. v. Quiksilver, Inc.*,
    2008 WL 2009668 (S.D.N.Y., 2008) ................................................................. 7

*Squarez v. SCF CEDAR, LLC*,
    2016 U.S. Dist. LEXIS 34064 (S.D.N.Y. 2016) ......................................... 9, 10

*Suncoast Capital Corp. v. Global Intellicom, Inc.*,
    280 A.D.2d 281(1st Dept 2001) ......................................................................... 5

*Teachers Ins. and Annuity Assoc. v. Tribune Co.*,
    670 F.Supp. 491 (S.D.N.Y. 1987) ................................................................... 11

*Tewolde et al v. Flavor Boutique 796 Inc. et al*,
    1:17-cv-02687-KHP ............................................................................................ 9

*U.S. v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars ($660,200.00), More or Less,*
    423 F.Supp. 2d 14 (E.D.N.Y. 2006) .................................................................. 8

*Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland*,
    2010 WL 4968247 (S.D.N.Y. 2010) ................................................................. 12

*Winston v. Mediafare Entm't Corp.*,
    777 F.2d 78 (2d Cir.1986) .................................................................................. 7

Defendants the Crabby Shack, LLC ("**Crabby Shack**", or the "**Company**"), Fifi Bell Clanton, and Gwendolyn Niles (collectively, the "**Defendants**"), by and through the undersigned counsel, respectfully submit this Reply Memorandum of Law and the accompanying declaration of Joshua Levin-Epstein, Esq. (the "**Epstein Decl. 2**") in response to Plaintiffs Nannyli Rivera and Jermaine Lynch (together, the "**Plaintiffs**") Memorandum of law in Opposition dated December 8, 2018 [Dckt. No. 30] (the "**Opposition**") and the accompanying declaration of Daniel Knox, Esq. (the "**Knox Decl.**") [Dckt. No. 29] in opposition to the Defendants' Motion to Enforce a binding settlement agreement [Dckt. Nos. 26-28] (the "**Motion to Enforce**").

## PRELIMINARY STATEMENT

In their Opposition, Plaintiffs make irreconcilable arguments about whether the indisputable agreement made at the Court-ordered July 23, 2018 mediation (the "**Mediation**") constitutes a valid and enforceable agreement. While Plaintiffs boldly admit that the "Plaintiffs…*agree[d] to accept*" the settlement agreement made at the Mediation, *Opposition* at p.3 (emphasis added), and petition this Court for the relief of rescission of said agreement, Plaintiffs simultaneously argue that said agreement cannot meet the "the legal requirements to be considered a binding preliminary settlement agreement." *Compare Opposition* at p. 6 (Point IV) with *Opposition* at pp. 3-6 (Points I-II). This is logically flawed.

Of course, the parties reached a valid and enforceable settlement at the Mediation. The documentary proof that the parties reached a settlement agreement is incontrovertible and overwhelming: (i) this Court's docket entry dated July 24, 2018 states that the Mediation has "settled", Epstein Decl. 2, ¶ 3 [Ex. A]; (ii) this Court's docket entry dated August 9, 2018 states that the "Mediation reports this matter has settled", Epstein Decl. 2, ¶ 3 [Ex. A]; (iii) Plaintiffs' very own letter filed on September 11, 2018 [ECF. No. 18] admits that "[t]he parties were able to

1

agree to general terms of settlement", Epstein Decl. 2, ¶ 4 [Ex. B]; (iv) Plaintiffs' Opposition admits that the parties reached a settlement, *Opposition* at p. 6; and (v) the parties contemporaneously memorialized the settlements reached at the Mediation, Epstein Decl. 2, ¶ 5 [Ex. C]. No other conclusion makes sense.

In a tacit acknowledgment that said settlement agreement is valid and enforceable, Plaintiffs' ask this Court, in the alternative, for rescission of the settlement agreement on the grounds that:

> "Defendants intentionally misrepresented their present financial condition during settlement negotiations in order to induce *Plaintiffs to agree to accept* a lesser amount than what is owed…'"

(emphasis added). *Opposition* at p. 6. This argument, too, is logically flawed.

On January 19, 2018, approximately six (6) months before the Mediation, Defendants provided Plaintiff with the Company's certified tax filings for the years 2014, 2015, and 2016, bank records, as well as hundreds of pages of other documents. Epstein Decl. 2, ¶ 6-7 [Ex. D-E]. Further, in a joint status report to the Court filed on July 3, 2018 [Dckt. No. 17], it was reported to this Court by both parties that "[t]he parties have completed document discovery." Epstein Decl. 2, ¶ 9 [Ex. F]. In total, 817 pages of documents were produced by the Defendants' *before* the Mediation. Epstein Decl. 2, ¶ 8. Not once, at the Mediation or elsewhere, did Plaintiffs challenge the authenticity of any of the 817 documents produced before the Mediation. Thus, Plaintiffs' argument concerning misrepresentation of the Defendants' financial condition makes no logical sense, either.

Plaintiffs' false characterization in its Opposition of what was said or not said at the Mediation violates the Confidentiality Stipulation, [*see* Dckt. entry dated November 2, 2017] entered into at the Mediation. Plaintiffs' reliance on a *single* newspaper clipping dated October 9,

2018 – that contains no information concerning the Company's financial state – makes assumptions concerning the Company's financial state that are totally unwarranted given the financial disclosures made in the instant case prior to the Mediation.

## ARGUMENT

I. **Plaintiffs Had a Full and Fair Opportunity to Review Defendants' Financial Records**

Throughout their Opposition, Plaintiffs repeatedly allege that Defendants' misrepresented their financial condition. *See Opposition*, at p. 2. Plaintiffs' conclusory allegations are puzzling.

A. **Defendants Provided Tax Records Well in Advance of the Mediation**

Nearly *six* months before the July 23, 2018 Mediation, Defendants produced hundreds of pages business records, bank transaction records, and tax returns to Plaintiffs via DropBox. Epstein Decl. 2, ¶ 6 [Ex. D]. Plaintiffs' counsel acknowledged receipt of these records. *Id.* Further, Plaintiffs' counsel acknowledged on the record in a joint status report that "discovery has been closed." Epstein Decl. 2, ¶ 7 [Ex. E]. Thus, not only have Plaintiffs had a meaningful opportunity to review Defendants' financial records, but they have also had multiple opportunities to confer in good faith regarding alleged deficiencies, request supplementary discovery, issue subpoenas, conduct depositions or seek court intervention. Plaintiffs did not avail themselves of *any* of these opportunities before the completion of discovery. Thus, Plaintiffs have forfeited their ability to complain at this juncture. *Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 188 (S.D.N.Y. 2008) ("by asserting – or at least acquiescing in the assertion – that all discovery…ha[d] been completed, plaintiffs forfeited their ability to complain at this juncture").

B. **Even Assuming, *Arguendo,* that Defendant had not Provided Tax Records and Bank Records, Such Conduct would not Entitle Plaintiffs to Rescind the Settlement Agreement**

Plaintiffs seek to rescind the July 23, 2018 Settlement Agreement (the "**Settlement Agreement**" or the "**Short-Form Agreement**") on the basis that Defendants "intentionally misrepresented their present financial condition" during settlement negotiations by not disclosing plans to expand their business. *Opposition*, at pp. 6-7. Setting aside the indisputable fact that Defendants produced hundreds of business records, bank statements, and tax returns *months* before the Mediation, Plaintiffs conclusory argument comes nowhere near meeting the legal threshold for recession.

The Second Circuit recognizes that, under New York law, "omissions of material facts may rise to a level constituting fraud, and serve as a basis for a recission." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 123 (2d Cir.1984) (citations omitted). However, "before such omissions can be labelled fraudulent…there must be a showing that a duty of disclosure existed." *Id.* (citations omitted). Plaintiffs' Opposition falls short of the requisite showing of recission. Moreover, all the facts and circumstances of a settlement need not be disclosed in order for a release to be valid and enforceable. *Consorcio Prodipe, S.A. de C.V.,* 544 F. Supp. 2d 178 (*citing Alleghany Corp. v. Kirby*, 333 F.2d 327, 333 [2d Cir.1964]).

Where, as here, an attempt to overturn a settlement is made on the basis of non-disclosure, Courts in this Circuit have concluded that such efforts are improper. *See Alleghany Corp. v. Kirby,* 333 F.2d 327, 333 (2d Cir.1964), *aff'd on reh'g,* 340 F.2d 311 (2d Cir.1965) (*en banc; per curiam* ); *accord Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 527 (2d Cir.1985).

## II. Plaintiffs' Gamesmanship Cannot Thwart the Enforcement of the Settlement Agreement Because Defendants Provided the Long-Form Settlement Agreement

Plaintiffs *for the first time* in this litigation are claiming that the Settlement Agreement is unenforceable because it expired by its own terms on July 30, 2018. *Opposition*, at p. 3. This is nonsense. Plaintiffs' gamesmanship in dragging out the memorialization of the long-form settlement agreement over straw-arguments cannot thwart the validity of the Settlement Agreement.

It is indisputable that the parties were exchanging drafts of the long form settlement agreement through and including September 27, 2018. Epstein Decl. 2, ¶ 10 [Ex. G]. Thus, Plaintiff's argument concerning the expiration of the Settlement Agreement defies common sense – and the law on the ratification of contracts.

A party is deemed to have ratified a contract through course of conduct when a party remains silent, or acquiesces in contract for any considerable length of time after he has opportunity to annul or void the contract. *Hawkins v. City of New York*, 40 A.D.3d 327, 327 (1st Dept 2007) (plaintiff ratified counsel's settlement agreement by failing to make any formal objection for "nearly seven months after being told about it"); *Clark v. Bristol-Myers Squibb & Co.,* 306 A.D.2d 82, 85 (1st Dept 2003) (plaintiff "implicitly ratified settlement by making no formal objection for months after she was told about it"); *Suncoast Capital Corp. v. Global Intellicom, Inc.*, 280 A.D.2d 281, 281-82 (1st Dept 2001) (six months of silence constitutes implicit ratification of settlement agreement); *Broadmass Assocs., LLC v. McDonalds Corp.*, 286 A.D.2d 409, 410 (2d Dept 2001) (construing eight months of silence as an implicit ratification of stipulation).

5

In this case, Plaintiffs should be deemed to have ratified the extension of the negotiation of the long-form settlement agreement because (i) Plaintiffs remained silent on this issue for nearly *five months* and (ii) continued to negotiate the terms of the long-form settlement agreement in the period following the expiration of the Settlement Agreement.

### III.    The Short-Form Agreement is A Binding Contact, Valid and Enforceable

#### A.    The Parties Intended to be Bound to their Settlement Agreement

Plaintiff's argument that the Settlement Agreement cannot be considered a valid and enforceable agreement, subject to *Cheeks* approval, is simplistic.

In this case, the parties repeatedly confirmed on the record that a settlement was reached at the Mediation. The evidence is overwhelming on this point: (i) the July 24, 2018 docket entry states "REPORT of Mediation settled" Epstein Decl. 2, ¶ 3 [Ex. A];  the July 26, 2018 email[1] from Mediator Bernbaum, Epstein Decl. 2, ¶ 11 [Ex. H]; Plaintiffs' September 10, 2018 status report[2]; Epstein Decl. 2, ¶ 4 [Ex. B]; and the July 23, 2018 Settlement Agreement Epstein Decl. 2, ¶ 5 [Ex. C]. As the Second Circuit has explained.

> As with any contractual agreement, a [party's] change of mind does not excuse her [or him] from performance of her [or his] obligations under the settlement agreement; *even in a case where the district court must use its authority to direct the final terms of that agreement*.

*Consolidated Edison Co. v. Fyn Paint & Lacquer* Co., 2008 WL 852067, at *16 (E.D.N.Y. 2008) (emphasis added). Epstein Decl. 2, ¶ 12 [Ex. I].

Thus, it cannot be seriously argued that an agreement was not made at the Mediation.

---

[1] Ex. H to the Epstein Decl. 2 provides as follows: "Daniel and Josh, It was a pleasure working with you and I'm glad we could settle the case. Pursuant to the local rules, my fee for the mediation is $600. Split between the two firms that is $300 each. Thank you. John"

[2] Ex. B to the Epstein Decl. 2 provides as follows: "The parties were able to agree to general terms of settlement through participation in mediation."

6

B. **The Four *Winston* Factors Demonstrate the Parties' Intended to be Bound to their Agreement**

The Court of Appeals for the Second Circuit has adopted a four-factor test to evaluate disputes around parties' settlement intentions in the absence of a formalized writing. Courts consider whether: (1) there has been an express reservation of the right not to be bound in the absence of a writing; (2) there has been partial performance of the contract; (3) all of the terms of the alleged contract have been agreed upon; and (4) the agreement at issue is the type of contract that is usually committed to writing." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78 (2d Cir.1986). The factors "may be shown by oral testimony or by correspondence or other preliminary or partially complete writings." *Id*. at 81 (internal quotation omitted). No single factor is dispositive. *Ciaramella v. Reader's Digest Ass'n, Inc.,* 131 F.3d 320, 323 (2d Cir.1997).

　　i.　**Express Reservation**

The first factor, whether the parties expressly reserved the right not to be bound in the absence of writing, weighs in favor of enforcing the Settlement Agreement.

As is clear on the face of the Settlement Agreement, the parties (i) never made such a reservation and (ii) the Settlement Agreement is itself a writing. As set forth more fully above, the record in this case clearly shows that the parties reached an agreement at the Mediation. No other conclusion is possible.

Although the parties contemplated that the terms of the settlement would be incorporated to a long-form agreement, this alone does not preclude enforcement. Courts in this circuit have made this abundantly clear – even in the context of FLSA cases. *Rahman v. Kaplan Cornelia, Inc et al*, 2014 WL 541851, at *5 (S.D.N.Y. 2014) ("the desire for judicial approval is not an 'express reservation' of the right not to be bound absent a written agreement"); *Shape CD, Ltd. v. Quiksilver, Inc*., 2008 WL 2009668, at *2 (S.D.N.Y., 2008) ("The absence of a fully executed

7

settlement agreement need not be fatal to enforcement, even if one were originally contemplated by the parties." (citing *Winston*, 777 F .2d 78)); *Delyanis v. Dyna–Empire, Inc.,* 465 F.Supp.2d 170 (E.D.N.Y.2006) (finding that, when plaintiff's counsel stated in an email to the mediator and the defendants' counsel that the case was settled and that the mediator could inform the Court, a binding agreement had been formed because there was no express reservation of the right not to be bound; this was held even though counsel referenced a future formalized agreement that had not yet been executed). Thus, a legion of Second Circuit precedent in the context of FLSA cases supports the enforcement of the Settlement Agreement.

Accordingly, the first *Winston* factor weighs in favor of enforcement.

### ii.     Partial Performance

The second factor of partial performance weighs in favor of a finding of an enforceable agreement.

Here, the parties took multiple steps toward fulfilling the settlement following the Mediation. Defendants sent Plaintiffs a proposed long-form agreement. Epstein Decl. 2, ¶ 10 [Ex. G]. On August 28, 2018, Plaintiffs sent Defendants suggested changes to the long-form agreement, even though it is customary for plaintiff's counsel to provide such agreements. *Id.* August 31, 2018, Defendants sent Plaintiffs a third long-form agreement. *Id.* The parties continued to draft and deliver settlement documents through and including September 27, 2018. *Id. See Jackson v. New York City Dep't of Educ.,* 2012 WL 1986593, at *3 (S.D.N.Y., 2012) (citing *U.S. v. U.S. Currency in the Sum of Six Hundred Sixty Thousand, Two Hundred Dollars ($660,200.00), More or Less,* 423 F.Supp.2d 14, 28-29 (E.D.N.Y. 2006) (drafting and delivering settlement documents constitutes partial performance)). Epstein Decl. 2, ¶ 10 [Ex. G].

Accordingly, this factor weighs strongly in favor of enforcement.

8

### iii. Remaining Material Terms to Negotiate

The third *Winston* factor examines whether all of the terms of the alleged contract were agreed upon. This factor favors enforcement.

Where a preliminary agreement contains a payment amount, a timeframe, a plan for payment, general release and default provisions, there are sufficient terms to create a binding and enforceable agreement – even where the parties contemplate executing a formal agreement. *Squarez v. SCF CEDAR, LLC*, 2016 U.S. Dist. LEXIS 34064 at *3 (S.D.N.Y. 2016) In *Squarez*, the parties signed a settlement term sheet following a mediation which included, *inter alia*: (i) the settlement amount; (ii) a general release; (iii) no admission of liability; and (iv) a provision stating "[t]he attorneys are to provide a more formalized agreement of the above terms." After the defendant sought to avoid his obligations by failing to cooperate in the drafting of a formal agreement, the plaintiff filed a motion to enforce the term sheet. In granting the plaintiff's motion, the Court held that the defendant's "representation that the term sheet was a non-binding agreement is inconsistent with the record." The Court rebuked the defendant for ignoring the fact that the parties exchanged long-form agreements via email multiple times, and that the term sheet contained monetary and non-monetary terms, including a general release and default language. These facts parallel the instant case, where, (i) the short-form agreement contains the necessary monetary and non-monetary verbiage, (ii) the parties exchanged multiple long-form agreements; and (iii) one party failed to cooperate in the drafting of a formal agreement.

Accordingly, the third *Winston* factor weighs strongly in favor of enforcement.

### iv. Usual Form of Agreement

Plaintiffs incorrectly argue that because this is an FLSA case a long-form agreement is required.

9

Courts in this Circuit have approved settlement agreements made at a mediation even where the agreement was not memorialized in a writing. *See e.g.*, *Tewolde et al v. Flavor Boutique 796 Inc. et al*, 1:17-cv-02687-KHP, at Dkt. No. 30 (approving settlement agreement reached at mediation in FLSA case without a long-form agreement.). As set forth more fully above, Plaintiffs' gamesmanship in raising straw-arguments to obstruct the memorialization of a long-form settlement agreement constitutes sharp practice.

Here, the Settlement Agreement, which of course is memorialized in a writing, meets all of the elements of a binding and enforceable contract.

### IV. The Cases Cited in the Opposition are Easily Distinguishable from the Instant Action

The cases cited in the Opposition are easily distinguishable from the instant action.

Plaintiffs' reliance on *Squarez v. SCF CEDAR, LLC* is wholly misplaced for the reasons stated in Section III(B)(iii), *supra*. 2016 U.S. Dist. LEXIS 34064; *Opposition*, at p. 5. This case supports Defendants' position that the short-form agreement must be enforced.

Plaintiffs' reliance on *Reprosystem, BV v. SCM Corp.* is also inapplicable. 727 F.2d 257, 262 (2d Cir. 1984); *Opposition*, at p. 5. There, mutual intent not to be bound prior to execution of a formal agreement was found to exist where the short-form agreement explicitly stated that "the proposed sale is subject to a definitive agreement expected to be reached soon," and the parties stated that "there was no assurance that [the] transaction will be completed." *Id* at 260. These facts are distinguishable where, as here, the record and the parties' course of conduct reflects that a settlement had been reached at Mediation. Epstein Decl. 2, ¶¶ 3-5, 10-11, [Ex. A-C, G-H].

Plaintiffs' reliance on *Hallock v. State of New York* for the proposition that "a settlement agreement may be invalidated for fraud" is also inapplicable here. 64 N.Y.2d 224, 230 (1984); *Opposition* at p. 6.

10

As a starting point, the Court of Appeals in *Hallock* began their analysis by stating:

"Stipulations of settlement are favored by the courts and not lightly cast aside… This is all the more so in the case of 'open court' stipulations within CPLR 2104, where strict enforcement not only serves the interest of efficient dispute resolution but also is essential to the management of court calendars and integrity of the litigation process."

(Citations omitted). 64 N.Y.2d 224 at 230. More importantly, the nature of the "fraud" at issue in *Hallock* was whether the settling attorney had authority from his client to conduct settlement negotiations. *Id*. Accordingly, the facts in that case have no application to the instant action, and should not be given any weight.

Plaintiffs reliance on *Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 74 (2d Cir. 1989), *Rosoff v. Mountain Laurel Cen. for Performing Arts*, 317 F.Supp. 2d 493, 498 (S.D.N.Y. 2004), and *Teachers Ins. and Annuity Assoc. v. Tribune Co.*, 670 F.Supp. 491, 499 (S.D.N.Y. 1987) is also misplaced.

The circumstances and contractual language at issue in each of these cases are clearly distinguishable from the instant matter. In *Rosoff*, the parties to a five-year employment agreement never agreed to the compensation to be paid. 317 F.Supp. 2d 493, 498. Here, all the material terms to the settlement were agreed-upon at Mediation. In *Teachers Ins.*, the Court held in favor of enforcement of a commitment letter that included an express reservation of right of board approval. 317 F.Supp. 2d 493 at 492. The circumstances here are much simpler, as there was no such express reservation. In *Phosphates, Inc. v. Arcadian Corp.*, the memorandum at-issue contained two references to the possibility that negotiations might fail, suggesting that a final deal had not yet been struck. 884 F.2d 69, 72 (2d Cir. 1989). Here, there were multiple representations between counsel and to the Court that an agreement in principle had been reached.

Case 1:17-cv-04738-SMG   Document 31   Filed 12/28/18   Page 16 of 16 PageID #: 138

**V.     Plaintiffs' Failure to Address the Arguments Raised in Points I and II of Defendants' Motion Constitutes a Waiver**

As a final matter, Plaintiffs cite to virtually no case law the Opposition, and make no attempt to distinguish Defendants' cases or address Defendants' legal arguments. In considering the Motion to Enforce, this Court should deem any unaddressed arguments raised as waived. *New York State Clerks Ass'n, v. Unified Court System of the State of New York,* 25 F.Supp.3d 459, 469 (S.D.N.Y. 2014) (It is well settled in the Second Circuit that [a] plaintiff's failure to respond to contentions raised in a motion…constitute an abandonment of those claims."). *See also Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland,* No. 09 CIV 4622, 2010 WL 4968247, at *7 (S.D.N.Y. 2010) ("Ordinarily…when a plaintiff fails to address a defendant's arguments on a motion to dismiss a claim, the claim is deemed abandoned, and dismissal is warranted on that ground alone.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant the relief requested in the Motion to Enforce and respectfully request that the Court proceed with the scheduling of a fairness hearing under *Cheeks*.

Dated: December 28, 2018
       New York, New York

By:     /s/ *Joshua Levin-Epstein*
        Joshua Levin-Epstein, Esq.
        1 Penn Plaza, Suite 2527
        New York, New York 10119
        Telephone: (212) 792-0046
        Email: Joshua@levinepstein.com

        Jason Mizrahi, Esq.
        1 Penn Plaza, Suite 2527
        New York, New York 10119
        Telephone: (212) 792-0048
        Email: Jason@levinepstein.com

        *Attorneys for Defendants*

Cc:     All parties via ECF