```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
NANNYLI RIVERA and JERMAINE LYNCH,            :
                                              :
                       Plaintiffs,            :
                                              :                MEMORANDUM
       -against-                              :                AND ORDER
                                              :                17-CV-4738 (SMG)
THE CRABBY SHACK, LLC, FIFI BELL              :
CLANTON, and GWENDOLYN NILES,                 :
                                              :
                       Defendants.            :
                                              :
-------------------------------------------------------------------x
```

GOLD, STEVEN M., U.S. Magistrate Judge:

## INTRODUCTION

Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA") and New York Labor Law.  Am. Compl. ¶ 1, Dkt. 13.  Plaintiffs allege that they were employed at defendants' restaurant from in or about July of 2015 until June or August of 2017 and that they regularly worked more than forty hours per week, but that defendants did not pay them at overtime wage rates for their overtime hours.  Am. Compl. ¶¶ 23–24.

## FACTS

This case was referred to court-annexed mediation in November of 2017.  Min. Entry dated Nov. 2, 2017, Dkt. 12.  On July 24, 2018, the Court's Alternative Dispute Resolution ("ADR") Administrator reported that the parties had reached a settlement.  The parties took no issue with the ADR Administrator's report until nearly seven weeks later, at which time plaintiffs submitted a letter stating that the parties could not agree on "the form of the settlement agreement."  Pls.' Letter dated Sep. 10, 2018, Dkt. 18.  Defendants, however, contend that the parties reached a binding agreement at the mediation and now seek to enforce it.

It is undisputed that, at the close of the mediation session, the parties executed a handwritten document, referred to herein as the "Mediation Agreement." The Mediation Agreement sets out nine agreed-upon terms, and reads in its entirety as follows:

1. 35,000
2. Joint & several liability
3. Payment over 24 months
4. FLSA release and confidentiality
5. Payments due at the last date of the month
6. Default interest at 9%, since the filing
7. Court maintain jurisdiction
8. 30 days notice of default
9. 5 day cure

The parties in *Rivera et al. v. The Crabby Shack, et al.*, 17-cv-05738, at a mediation held on July 23, 2018 have reached a settlement, the terms of which appear above. A formal settlement agreement will be finalized by July 30, 2018.

AGREED TO:

| For Plaintiffs | For Defendants |
|---|---|
| [signature] | [signature] |
| Daniel Knox, Esq. | Joshua Levin-Epstein |
| Counsel for Plaintiffs | Attorney for Defendants |

Mediation Agreement, Dkt. 27-1.

The formal settlement agreement referenced in the Mediation Agreement was never finalized, apparently because the parties could not agree on the terms under which attorney's fees would be recoverable in the event of litigation to enforce the parties' agreement. Pls.' Letter dated Sep. 10, 2018. Plaintiffs insisted on a term providing for recovery of fees without limit, whereas defendants sought to cap the amount of fees that could be recovered in the event of enforcement litigation. Defs.' Letter dated Nov. 2, 2018, Dkt. 20.

Defendants now move to enforce the terms of the Mediation Agreement. Dkt. 28. Defendants also move for approval of the Mediation Agreement's terms pursuant to *Cheeks v.*

2

*Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  Dkt. 36.  For the reasons set forth below, defendants' motions are granted.

## DISCUSSION

*A. Whether the Mediation Agreement is Enforceable Despite the Parties' Failure to Finalize and Execute a "Formal Settlement Agreement"*

The first issue raised by the pending motions is whether the Mediation Agreement is enforceable despite the failure of the parties to prepare and execute a "formal settlement agreement."  Whether the parties entered into a binding settlement agreement by executing the Mediation Agreement depends upon their intent when they did so.  *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).  "To discern that intent a court must look to the words and deeds of the parties which constitute objective signs in a given set of circumstances."  *Id.* (internal quotations and alterations omitted).[1]

Here, the objective signs indicate that the parties intended to be bound by the agreement they reached at the mediation.  The Mediation Agreement explicitly states that "[t]he parties . . . *have reached* a settlement, the terms of which appear above" (emphasis added).  Immediately above the signatures of counsel appear the words, in block capital letters, "AGREED TO."  The text of the Mediation Agreement thus supports the conclusion that the parties understood it to state the material terms of a settlement to which all of them had agreed.  The circumstances under which the Mediation Agreement was executed also indicate the parties' intent to be bound by it.  The Agreement was executed by counsel during the course of a mediation presided over by a court-appointed mediator; the formality of these circumstances supports the inference that the Mediation Agreement was not a tentative or preliminary draft.  Clearly, the mediator was left

---

[1] Because I conclude that the Mediation Agreement is enforceable, I do not consider plaintiffs' alternative argument that the time to execute a "formal settlement agreement" has expired.

with the impression that a binding settlement agreement had been reached, as he reported to the Court that the case had settled.  Report of Mediation Settled dated July 24, 2018.

Courts have repeatedly held even less formal agreements to be enforceable.  Generally, "parties are free to enter into a binding contract without memorializing their agreement in a fully executed document."  *Winston*, 777 F.2d at 80.[2]  A binding settlement may even be entered into orally, and may be enforceable despite the expectation that the agreement will be documented in writing.  *Jackson v. N.Y.C. Dep't of Educ.*, 2012 WL 1986593, at *2 (S.D.N.Y. June 4, 2012).

In *Winston*, the parties "orally reached an agreement in principle."  777 F.2d at 79.  They then exchanged a series of written drafts but never agreed upon or executed a final written version of their agreement.  *Id.* at 79–80.  In the course of concluding that the parties had not reached a binding agreement, the Second Circuit identified four relevant factors: whether there has been an "express reservation of the right not to be bound in the absence of a writing," "whether there has been partial performance," whether there has been agreement on all of the terms of the alleged contract, and whether the agreement is of the type ordinarily reduced to writing.  *Id.* at 80.

Here, the Mediation Agreement contains no reservation of the right not to be bound in the absence of the contemplated formal settlement agreement, and this factor accordingly weighs in favor of enforcement.  There has also been partial performance, at least to the extent that the parties began drafting a final agreement and allowed the Court's ADR Administrator to report that the case had settled without correction or comment for nearly seven weeks thereafter.  *See Jackson*, 2012 WL 1986593, at *3 (finding partial performance where, after reaching an

---

[2] Although the Court in *Winston* was describing New York State law, there is "no material difference" between New York and federal law with respect to the issues pertinent here.  *See, e.g.*, *Rahman v. Kaplan Cornelia, Inc.*, 2014 WL 541851, at *4 n.4 (S.D.N.Y. Feb. 11, 2014); *McNamara v. Tourneau, Inc.*, 464 F. Supp. 2d 232, 237 (S.D.N.Y. 2006).

4

agreement orally, the parties began "preparing and exchanging draft settlement documents, and most significantly, communicated the settlement to the Court").

As to the third factor, the parties reached agreement on all material terms of the settlement; plaintiffs do not now contend that any of the terms in the Mediation Agreement were not finally resolved at the mediation or are inaccurately reflected in the agreement. The term that apparently caused plaintiffs to balk at signing a final agreement—the right to seek an uncapped amount of attorney's fees in the event of enforcement litigation—is a subject that is not referenced at all in the Mediation Agreement. Nor is it a term that would inevitably need to be resolved before a final agreement could be reached; the subject of how much in attorney's fees should be recoverable if enforcement litigation ensues involves a hypothetical concern that rarely arises, and one that is frequently not addressed at all in settlement agreements. *See, e.g.*, *Rahman*, 2014 WL 541851, at *6 (concluding that no material terms were left to negotiate where "[t]he Court recommended a simple settlement: payment of a settlement sum in exchange for a release and dismissal of all of [plaintiff's] claims"). The fourth factor also weighs in favor of enforcement; although agreements to settle FLSA cases are typically reduced to writing, the attorneys for both sides in this case executed a written document setting forth each of the material settlement terms.

Circumstances like those raised here were held to give rise to an enforceable settlement agreement in *Lewis v. N.Y.C. Transit Auth.*, 2015 U.S. Dist. LEXIS 84086 (E.D.N.Y. June 24, 2015). The parties in *Lewis* participated in court-annexed mediation. *Id.* at *2. During the mediation session, counsel for the parties reached an agreement and memorialized its elements in a "Term Sheet." *Id.* The Term Sheet stated that the parties would "memorialize the settlement terms in a written settlement agreement." *Id.* at *3. After exchanging drafts, however, the

5

parties were unable to agree upon the language of a final settlement agreement. *Id.* at *3–6. Nevertheless, for reasons similar to those discussed above, the court held in *Lewis* that "the Term Sheet constituted a binding and enforceable settlement agreement even though it contemplated a further and more formal memorialization of the terms." *Id.* at *9; *see also Suarez v. SCF Cedar, LLC*, 2016 WL 6601547, at *2 (S.D.N.Y. Mar. 14, 2016) (enforcing a settlement term sheet despite a provision calling for "a more formalized agreement"), *report and recommendation adopted*, 2016 WL 6601549 (S.D.N.Y. Nov. 7, 2016); *Raghavendra v. Trustees of Columbia Univ.*, 686 F. Supp. 2d 332, 341 (S.D.N.Y. 2010) (enforcing an agreement reflected in a term sheet that "expressly provide[d] that it was not meant to be the final expression of the settlement agreement"), *aff'd in relevant part, remanded on other grounds*, 434 F. App'x 31 (2d Cir. 2011).

   Plaintiffs argue in the alternative that, even if the Mediation Agreement were otherwise binding, it should not be enforced because of defendants' bad faith during settlement negotiations. Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Compel Settlement ("Pls.' Mem.") at 6–7, Dkt. 30. Plaintiffs fail, however, to establish that defendants acted in bad faith. Plaintiffs' sole contention in this regard is that defendants misrepresented their financial condition to encourage plaintiffs to accept a lesser amount in settlement. *Id.* Defendants, though, provided plaintiffs with substantial information about their financial circumstances, including bank records and tax returns, and did so months before the mediation took place. Reply Mem. of Law in Further Supp. of Defs.' Mot. to Enforce Settlement Agreement ("Defs.' Reply Mem.") at 2–3, Dkt. 31. During oral argument, counsel for plaintiffs acknowledged having received these documents, but complained that records and tax returns were produced for 2015 and 2016 and not more recent years. Tr. of Jan. 8, 2019 ("Tr.") at 16:7–21, Dkt. 34. Plaintiffs' counsel never sought more recent financial information, though, *id.* at 16:22–25, and

6

plainly knew what documents defendants did and did not provide before and at the time of the mediation. Plaintiffs nevertheless decided to agree to the settlement terms.

Moreover, the only fact plaintiffs point to as indicating that defendants were in a stronger financial position than they acknowledged at the mediation is that, according to press reports, defendants opened a second restaurant at a new location in late 2018. Decl. of Daniel Knox in Opp'n to Defs.' Mot. to Compel Settlement ("Knox Decl.") ¶¶ 12–13, Dkt. 29; Knox Decl. Ex. A, Dkt. 29-1; Knox Decl. Ex. B, Dkt. 29-2. Without further details about how the funds for the second location were raised, or what representations defendants in fact made about their financial circumstances, the Court has no basis upon which to conclude that any representations made by defendants during the mediation were in any way inaccurate or misleading.

Finally, plaintiffs argue that the Mediation Agreement should not be considered binding because paragraph four provides for confidentiality and the Second Circuit has indicated its disapproval of confidential settlements of FLSA claims. *See Cheeks*, 796 F.3d at 206. However, courts considering FLSA settlement agreements with objectionable terms frequently strike the offending term rather than refuse to approve the settlement. *See, e.g.*, *Garcia v. Good for Life by 81, Inc.*, 2018 WL 3559171, at *4–5 (S.D.N.Y. July 12, 2018); *Chung v. Brooke's Homecare LLC*, 2018 WL 2186413, at *2–3 (S.D.N.Y. May 11, 2018). Accordingly, the inclusion of a confidentiality provision does not preclude enforcement of the Mediation Agreement.

For all the reasons stated above, the Mediation Agreement reflects a binding settlement agreement. Accordingly, if its terms survive the scrutiny required by *Cheeks*, the Mediation Agreement should be enforced.

*B. Whether the Terms of the Mediation Agreement Are Reasonable and Should Be Approved*

In *Cheeks*, the Second Circuit held that "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." 796 F.3d at 206. Before approving a settlement, a court must be satisfied that its terms are "fair and reasonable." *Flores v. Food Express Rego Park, Inc.*, 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016). Courts making this evaluation consider a plaintiff's possible range of recovery, the extent to which the settlement avoids the burdens and expense of litigation, the litigation risks faced by the parties, whether the settlement was reached through arms-length bargaining with the assistance of counsel, and the possibility of fraud or collusion. *Douglas v. Allied Universal Sec. Servs.*, 2019 WL 1578072, at *2 (E.D.N.Y. Mar. 29, 2019) (citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

The Mediation Agreement was reached by counsel with the assistance of a court-annexed mediator. As the current dispute indicates, the negotiations were undoubtedly conducted at arms-length and without collusion.

Moreover, the settlement amount—$35,000—is reasonable in light of plaintiffs' possible range of recovery. Defendants employed an outside payroll processing company and produced payroll records for plaintiffs in discovery. Defs.' Mem. of Law in Supp. of Defs.' Mot. to Approve Settlement Agreement ("Defs.' Approval Mem.") at 3, Dkt. 37. Defendants also maintained electronic time records. *Id.* Based upon these records, defendants calculate plaintiffs' recoverable damages to be $8,137.87. *Id.* at 6. Defendants also calculated plaintiffs' potential recoverable damages based upon plaintiffs' allegations, and determined that amount to be $21,559.75. *Id.* Plaintiffs do not challenge the accuracy of these amounts in their opposition

8

to defendants' motion for approval.  Pls.' Mem of Law in Opp. to Defs.' Mot. to Approve Settlement Agreement ("Pls.' Approval Mem."), Dkt. 39.

It is not clear whether defendants included liquidated damages in these calculations; assuming they did not, plaintiffs' wage claims, even with liquidated damages, would range from approximately $16,275 to $43,120.  Under these circumstances, $35,000 is a reasonable settlement amount.  Moreover, the calculations demonstrate that plaintiffs risk recovering less than the settlement amount at trial if defendants' records are accepted as accurate.

Plaintiffs challenge the reasonableness of the two-year payment schedule provided in the Mediation Agreement.  Pls.' Approval Mem. at 3–4.  At the time plaintiffs agreed to this term, though, they had obtained substantial discovery of defendants' financial circumstances.  Moreover, defendants' counsel represented to the Court during oral argument that defendants are currently approximately $80,000 in debt, and that the monthly rent on their new restaurant is only $2,000 or $2,500 per month.  Tr. at 20:3–9.  In light of these facts, the term calling for the settlement to be paid in monthly installments over time is a reasonable one.

Plaintiffs also point out that the Mediation Agreement does not set forth how the $35,000 will be divided.  Pls.' Approval Mem. at 3.  The Court assumes that counsel will be reimbursed for the $400 filing fee; that he will take one-third of the remaining amount, or $11,533, as his fee; and that the remaining amount, or $23,067, will be shared by the two plaintiffs in proportion to the amount of wages they claim they are owed.  In light of the ample discovery provided by defendants to be reviewed by plaintiffs' counsel, and counsel's participation in mediation, an attorney's fee in this amount is reasonable.

Finally, plaintiffs assert that defendants have improperly supplemented their motion for approval by filing exhibits after their motion was fully briefed.  Pls.' Letter dated Mar. 14, 2019,

Dkt. 46.  This argument is completely lacking in merit.  Defendants referenced the very same exhibits in their original motion papers but had difficulty filing them electronically and accordingly offered to provide them to the Court in hard copy.  Defs.' Letter Motion dated Feb. 8, 2019, Dkt. 35.  Defendants later overcame that difficulty and filed the very same documents electronically.  Defs.' Letter dated Mar. 13, 2019, Dkt. 44.  There has been no tardy or otherwise improper supplementation here.

## CONCLUSION

For all the reasons stated above, defendants' motions to enforce and approve the settlement terms reflected in the Mediation Agreement are granted, with the exception that the confidentiality provision is stricken.  The $35,000 settlement amount is to be distributed as indicated in this Memorandum and Order, with each monthly payment disbursed in proportion to the respective shares of the total amount to be received by counsel and each plaintiff.

Defendants shall make the first payment pursuant to the Mediation Agreement by June 1, 2019, and by the first day of each month thereafter until the full amount is paid.  The Court will retain jurisdiction.  In the event defendants do not make the payments required by the Mediation Agreement, plaintiffs may seek enforcement after providing notice and an opportunity to cure.

SO ORDERED.

_____/s/_____
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
May 1, 2019

U:\Rivera v Crabby Shack Final.docx